583 F.2d 708
 VENORE TRANSPORTATION COMPANY, a corporation of the Republic
of Liberia, Appellant,
v.
M/V STRUMA, her engines, her boilers, tackle, etc., and Bulk
Transport Corporation, Appellee.
 No. 77-1935.
 United States Court of Appeals,
Fourth Circuit.
 Argued Sept. 13, 1978.
Decided Oct. 5, 1978.
 
 H. M. McCormack (Donald A. Krach, Niles, Barton & Wilmer, Baltimore, Md., on brief), for appellant.
 David R. Owen, Baltimore, Md. (Semmes, Bowen & Semmes, Baltimore, Md., Arthur J. Blank, Jr., Hill, Betts & Nash, New York City, on brief), for appellee.
 Before HAYNSWORTH, Chief Judge, and WINTER and BUTZNER, Circuit Judges.
 HAYNSWORTH, Chief Judge.
 
 
 1
 Venore Transportation Company, time charterer of the 55,000 ton S. S. OSWEGO LIBERTY, sought damages from the 60,000 ton M/V STRUMA and her owner, Bulk Transport Corporation, for loss of use of the OSWEGO LIBERTY after the two vessels had been in a collision. The district court entered summary judgment for the defendants, reasoning that the claim was foreclosed by the Supreme Court's decision in Robins Dry Dock and Repair Co. v. Flint, 275 U.S. 303, 48 S.Ct. 134, 72 L.Ed.2d 296. Because there was no suspension in the payment of charter hire while the OSWEGO LIBERTY was being repaired, we conclude that Robins Is inapplicable and that recovery of charter hire should be allowed.
 
 
 2
 In January 1972 the Oswego Shipping Corporation let the OSWEGO LIBERTY to Venore Transportation Company for a term of thirteen and a half years. The time charter party fixed the charter hire at monthly rates of more than $90,000 subject to escalation for increases, and to declination for decreases, in the cost of manning the vessel, of insurance, of repairs, of stores, of subsistence costs and of tonnage taxes. The instrument gave Venore the right to complain to the owner of performances of the master, officers and the crew, and for their replacement if the owner found the complaints justified, and there was a provision that the matter would be under the orders and directions of Venore in performing the charter, but it specifically disclaimed any demise of the vessel to the charterer.
 
 
 3
 On November 27, 1974 the OSWEGO LIBERTY and the STRUMA were in a collision, and the OSWEGO LIBERTY was withdrawn from service and laid up for repairs until January 17, 1975. During the time she was under repair, escalated charter hire of $225,380.64 accrued, which Venore has paid to the owner.
 
 
 4
 For the purpose of these proceedings, the STRUMA has conceded her fault, and the owner's claim against her has been settled. The owner's claim, however, consisted entirely of the expenses to which it was put to repair the physical damage sustained by the OSWEGO LIBERTY. It claimed nothing for its loss of use of the vessel. Indeed, it could not have made such a claim, for it had received the full charter hire for the period during which the vessel was under repair.[1]
 
 
 5
 Robins Dry Dock was not a case arising out of a collision. The charter party there required that the vessel be dry docked periodically. While in dry dock, her propeller was negligently damaged and had to be replaced. That enlarged the time during which the vessel was out of service, and it was for the loss of use of the vessel during that period that the time charterer claimed. The Supreme Court reasoned that the dry dock's duty arose out of its contract with the owner, and that it had no such contractual duty to the time charterer. Since there had been no demise of the vessel, it was technically in the possession of the owner, and the time charterer had no property interest in it. Thus there was applicable the principle that one who unintentionally but negligently damages the property of another is not liable to others who may suffer economic loss because the owner is unable to perform contractual commitments to those others.
 
 
 6
 It is essentially a principle of disallowance of damages because of remoteness, and because of the concern that the number and the amount of potential claims in a given instance may be staggering. The time charterer in Robins Dry Dock had not paid charter hire for the period during which the vessel was out of service. The claim was essentially one for loss of anticipated profits.
 
 
 7
 The principle has found expression in a variety of cases since Robins Dry Dock.
 
 
 8
 In this court, in Rederi A/B Soya v. Evergreen Marine Corporation, 1972 A.M.C. 538 (4th Cir. 1972), Affirming 1972 A.M.C. 1555 (E.D.Va.1971), the damaged vessel was off-hire for six weeks. Both the owner and the time charterer claimed damages for loss of her use. The owner was held entitled to recover generally what it would have received in charter hire had the vessel not been out of service, but the time charterer was held to be entitled to recover nothing. What the time charterer claimed was a loss of anticipated profits, the amount it could have received in charter hire in excess of what it would have had to pay in charter hire if the vessel had been in service.
 
 
 9
 In Henderson v. Arundel Corporation, 384 F.2d 998 (4th Cir. 1967), Affirming 262 F.Supp. 152 (D.Md.1966), employees of a dredge sought to recover lost wages and subsistence from a ship which had collided with the dredge, putting it out of service for six weeks. The principle of Robins Dry Dock was held to foreclose the claim.
 
 
 10
 In General Foods Corporation v. United States, 448 F.Supp. 111 (D.Md.1978), it appeared that a ship had collided with and damaged a railroad bridge over the Chesapeake and Delaware Canal. The collision with the bridge required General Foods to ship by truck goods moving to and from one of its plants, and it sought to recover the additional costs imposed upon it. The claim, of course, was denied.
 
 
 11
 Similar claims have been denied in other circuits. See Dick Meyers Towing Service, Inc. v. United States, 577 F.2d 1023 (5th Cir. 1978); Kaiser Aluminum & Chemical Corporation v. Marshland Dreding Co., 455 F.2d 957 (5th Cir. 1972); Federal Commerce & Navigation Co. v. M/V Marathonian, 392 F.Supp. 908 (S.D.N.Y.), Aff'd 528 F.2d 907 (2d Cir. 1975).
 
 
 12
 In Chargeurs Reunis Compagnie Francaise De Navigation A Vapeur and Others v. English & American Shipping Company, 9 Lloyds List L.R. 464 (1921), the English Court of Appeal held that the French government, as time charterer of a vessel, could not recover charter hire even though it had actually paid the charter hire for the period during which the vessel was out of service. It seems to have been enough for the English justices that the French government was neither the owner of the vessel nor in possession of her. We have found no American case reaching a similar conclusion, and we think that on principle we should not follow the early lead of the English Court of Appeal.
 
 
 13
 The principle of Robins Dry Dock is perfectly defensible, if pragmatic considerations require the foreclosure of remote damage claims.[2] The tort feasor, having paid the owner for its loss of use of the vessel, should not be required to pay additionally for the time charterer's loss of anticipated profits. A pragmatic approach would require that the offending vessel pay for loss of use of the damaged vessel once, but no more. Unless the offending vessel is required to pay for the loss of use of the OSWEGO LIBERTY in this case, however, it would never be required to pay at all. The owner lost no charter hire. It could not claim a loss it had not suffered, and it did not do so. But payment for loss of use of the damaged vessel is a conventional item of recovery, and the fact that the charter party has transferred the risk of loss of use from the owner to the time charterer should not extinguish the right to a recovery of a traditional item of damages. There is nothing remote about these damages; the only objection is that they were suffered by the time charterer rather than by the owner.
 
 
 14
 It is only in a highly technical sense that the time charterer may be said not to be in possession of the vessel. It is a consequence of the distinction between a demise of a vessel under a bare boat charter and a time charter under which the owner furnishes the master, officers and crew, together with certain stores, supplies, insurance and taxes. But the time chartered vessel is under the direction of the charterer. The vessel sails when and where the charterer directs, carries what cargo the charterer provides, and the master is specifically required to comply with the orders of the charterer in such things as the selection and appointment of agents. The charterer is authorized to sub-charter the vessel, but as long as it is operating the vessel for its own account and profit, it is only in a highly technical sense that it may be said that the charterer has no possessory interest in the vessel. Its interest in the vessel is sufficient to give it standing to claim damages, measured by charter hire paid when the owner has no claim for loss of use because its receipts of charter hire have been uninterrupted.
 
 
 15
 We do not intend, however, to suggest that the time charterer is entitled to lost profits. That kind of claim is foreclosed by Robins Dry Dock. The traditional item of recoverable damage is the owner's claim for loss of use. When the vessel is under a time charter, the starting point for the measurement of those damages is lost charter hire. Our only holding is that when there has been no suspension in the payment of charter hire during the period when the vessel is out of service, the time charterer who has paid the charter hire is entitled to recover what the owner would have been entitled to recover had those payments been suspended.
 
 
 16
 In Robins Dry Dock, Mr. Justice Holmes wrote broadly, as he customarily did, but there is no inconsistency in our holding and that of the Supreme Court in Robins Dry Dock. Nor do we enlarge in any way the types of damages which have been traditionally recoverable, nor the offending vessel's obligation of recompense. Under our holding, the STRUMA and her owner will pay no more than they would have if the charter had provided for a suspension of charter hire while the vessel was laid up.
 
 
 17
 Thus we conclude that either the owner or the time charterer, but not both, may claim damages for loss of use depending upon the charter's placement of the risk of loss of use.
 
 
 18
 REVERSED AND REMANDED.
 
 WINTER, Circuit Judge, dissenting:
 
 19
 I agree with the district court that Venore's claim is foreclosed by Robins Dry Dock & Repair Co. v. Flint, 275 U.S. 303, 48 S.Ct. 134, 72 L.Ed.2d 290 (1927), and our per curiam decision in Rederi A/B Soya v. Evergreen Marine Corp., 1973 A.M.C. 538 (4 Cir. 1972), adopting the opinion of the district court, 1972 A.M.C. 1555 (E.D.Va.1971). I would affirm.
 
 
 20
 Of course, in Robins Dry Dock the libel was not brought to recover loss of use measured by the hire paid by the charterer because, in that case, the charter party suspended the charterer's liability for hire while the vessel was out of service. By contrast, in the instant case the loss of use is sought to be measured by the hire which Venore was required to pay to the owner while the vessel was disabled. But I disagree with the majority that Robins Dry Dock can be read to turn solely on the claimed measure of damages, and its controlling effect on the instant case thus so neatly avoided. Recovery in Robins Dry Dock was denied, not on the ground that the damages were too remote, but on the ground that a time charterer has no standing or property interest to recover from an unintentional wrongdoer:
 
 
 21
 The injury to the propeller was no wrong to the (time charterers) but only to those to whom (the vessel) belonged. . . . (The time charterers') loss arose only through their contract with the owners and while intentionally to bring about a breach of contract may give rise to a cause of action . . . no authority need be cited to show that, as a general rule, at least, a tort to the person or property of one man does not make the tort-feasor liable to another merely because the injured person was under a contract with that other unknown to the doer of the wrong. . . . The law does not spread its protection so far.
 
 
 22
 275 U.S. at 308-09, 48 S.Ct. at 135. Robins Dry Dock thus establishes a rule of Liability, not of Damages, as the majority would read it.
 
 
 23
 The majority also justifies the result it reaches on the pragmatic ground that the tortfeasor, the offending vessel, should pay for loss of use of the damaged vessel once, but no more, and that where the owner suffers no loss of use because the time charterer, by the terms of the time charter, has not been excused from paying hire, the time charterer should be permitted to recover its direct loss, i. e. the hire it must pay, but not its loss of profits. This very argument was rejected in Robins Dry Dock:
 
 
 24
 It seems to have been thought that perhaps the whole (loss) might have been recovered by the owners, that in that event the owners would have been trustees for the (charterers) to the extent of the (charterers') share, And that no injustice would be done to allow the (charterers) to recover their share by direct suit. But justice does not permit that the (tortfeasor) be charged with the full value of the loss of use unless there is some one who has a claim to it as against the (tortfeasor). The (charterers) have no claim either in contract or in tort, and they cannot get a standing by the suggestion that if some one else had recovered it he would have been bound to pay over a part by reason of his personal relations with the (charterers). (Emphasis added.)
 
 
 25
 275 U.S. at 309, 48 S.Ct. at 135.
 
 
 26
 As I read the district court's opinion in Rederi, which a panel of this court, having two of the same judges who comprise the present panel, adopted, the Robins Dry Dock rule was applied to defeat recovery by a time charterer of its damages "for loss of profits Or loss of hire of the vessel." (Emphasis added.) See 1972 A.M.C. at 1567.* More significantly, in adopting that opinion we stated, "(u)ntil the Supreme Court chooses to reconsider (Robins Dry Dock ) that decision is binding on us." I think that it is binding in the instant case also.
 
 
 27
 I, therefore, respectfully dissent.
 
 
 
 [1]
 Agwilines, Inc. v. Eagle Shipping Co., 153 F.2d 869 (2d Cir. 1946)
 
 
 [2]
 See Paulsen, Provable Damages in Collision Cases, 51 Tul.L.Rev. 1047, 1062-63 (1977); James, Limitations on Liability for Economic Loss Caused by Negligence: A Pragmatic Appraisal, 25 Vand.L.Rev. 43 (1972); And see Note, Negligent Interference with Contract: Knowledge as a Standard for Recovery, 63 Va.L.Rev. 813, 818-829 (1977)
 
 
 *
 It is true that the charter party in this case suspended the hire, Inter alia, in case of damage to the hull or other accident