Arth H. MATHIESEN and Rederi A/S Mascot, Plaintiffs-Appellees,

v.

M/V OBELIX, her engines, boilers, tackle, etc. and Statistix Shipping N.V., Defendants-Appellees,

v.

UNIMILLS B.V. and Margarine Verkaufs Union, GmbH, Appellants.

UNIMILLS B.V. and Margarine Verkaufs Union GmbH, Plaintiffs-Appellants,

v.

STATISTIX SHIPPING, N.V., et al., Defendants-Appellees.

No. 86–3728
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

May 22, 1987.
Rehearing and Rehearing En Banc Denied June 23, 1987.

Joseph W. Looney, Marguerite K. Kingsmill, Milling, Benson, Woodward, Hillyer, Pierson, & Miller, New Orleans, La., for appellants.

Benjamin W. Yancey, Terriberry, Carroll, Yancey, & Farrell, New Orleans, La., for Mathiesen and Rederi A/S Mascot.

W. Thaddeus Miller, Burlingham, Underwood & Lord, Bob Pohl, New York City, for Statistix.

Before POLITZ, WILLIAMS, and JONES, Circuit Judges.

POLITZ, Circuit Judge:

Unimills B.V. and Margarine Verkaufs Union GmbH[1] seek recovery of storage charges incurred because of a delay experienced in the loading and transportation of soybeans. That delay resulted from the collision of a vessel chartered to transport the soybeans with another vessel, prior to the time the soybeans were loaded. Applying the rule of *Robins Drydock & Repair Co. v. Flint*, 275 U.S. 303, 48 S.Ct. 134, 72 L.Ed. 290 (1927), the district court granted defendants' motion for summary judgment. Agreeing with that application, and finding that complainants are precluded from recovering their losses from the vessel they voyage-chartered, we affirm.

### Background

Peavy International, Inc. sells soybeans from a grain elevator it operates on the banks of the Mississippi River between Baton Rouge and New Orleans. Margarine purchased a quantity of soybeans from Peavy. Unimills voyage-chartered the M/V BARBRO, a freighter of Norwegian registry, to transport the cargo to Rotterdam. The BARBRO arrived timely and dropped anchor to await access to the grain elevator. On May 4, 1980, while the BARBRO was awaiting its turn to load cargo, the M/V OBELIX, a tanker awaiting a berth at a nearby refinery, collided with the BARBRO. The two vessels were not separated by professional salvors until May 22, 1980.

As a result of the collision, the BARBRO was unable to either receive the soybeans or transport them to Rotterdam as scheduled. As a consequence, Unimills and Margarine had to purchase replacement soybeans to fulfill their commitments and they incurred delay storage charges in both the United States and Rotterdam. They seek recovery of those storage charges from either or both the BARBRO and the OBELIX. We conclude that there is no legal basis for recovery against either.

### Analysis

1. Recovery in tort: *Robins Dry Dock*

■ This case poses the conundrum which arises when "the defendant commits a tort causing physical harm to A which also results in an interference with B's contract rights without actually causing physical harm to B." *Prosser and Keeton on the Law of Torts*, § 129, p. 997 (5th ed. 1984). What rights, if any, do Unimills and Margarine have to recover losses caused by damage to the vessel they chartered to carry their cargo, prior to the loading of their cargo?

Under the venerable rule of *Robins Dry Dock* they have none. As stated by Justice Holmes, in rejecting the demands of a time charterer for damages arising out of delays in repairs by a negligent shipyard:

> [N]o authority need be cited to show that, as a general rule, at least, a tort to the person or property of one man does not make the tort-feasor liable to another merely because the injured person was under a contract with that other, unknown to the doer of the wrong. * * * The law does not spread its protection so far (citations omitted).

*Robins Dry Dock*, 275 U.S. at 309, 48 S.Ct. at 135, 72 L.Ed. at 292. Although eloquently criticized for its rigidity,[2] the rule has persisted because it offers a brightline application in an otherwise murky area.[3] Thus as this court, sitting en banc, has

1. The exact relationship between Unimills and Margarine is not clear from the record, but is not material to resolution of this appeal.

2. *State of Louisiana ex rel. Guste v. M/V TEST-BANK*, 752 F.2d 1019 (5th Cir.1985) (en banc) (Wisdom, J., dissenting).

3. As we observed in The *MASON LYKES*, 768 F.2d 659, 669 (5th Cir.1985):

> The spectre of runaway recovery lies at the heart of the *Robins Dry Dock* rubric. As Professors Prosser and Keeton noted in their most recent work:
>
> > The policy against runaway recovery based on negligence is rooted at least in part on what Professor James has called the "pragmatic objection," that while physical harm generally has limited effects, a chain reac-

recently reaffirmed, physical damage to a proprietary interest, except in very limited instances, is a prerequisite to recovery for economic loss in cases of unintentional maritime tort. *State of Louisiana ex rel. Guste v. M/V TESTBANK,* 752 F.2d 1019 (5th Cir.1985) (en banc).

The *Robins Dry Dock* rubric does not bar the recovery of losses by the owner of the cargo when the carrying vessel is involved in a collision, albeit the cargo itself is not damaged. In that instance the shipper is embarked on a common adventure with the vessel. We distilled the applicable principles in our recent denial of rehearing in *Cargill, Inc. v. Doxford and Sunderland, Ltd.,* 785 F.2d 1296 (5th Cir.1986):

> It is well-settled that when two ships collide, the owners of cargo on one ship may proceed in tort directly against the other, non-carrying ship. *The TOLUMA,* 294 U.S. [394] at 400, 55 S.Ct. [467] at 469–70 [79 L.Ed. 942 (1935)]; *United States v. Atlantic Mutual Ins. Co.,* 343 U.S. 236, 240, 72 S.Ct. 666, 668–69, 96 L.Ed. 907 (1952); *Weyerhauser S.S. Co. v. United States,* 372 U.S. 597, 604, 83 S.Ct. 926, 930, 10 L.Ed.2d 1 (1963); *O/Y Finlayson-Forssa A/B v. Pan Atlantic S.S. Corp.,* 259 F.2d 11 (5th Cir.1958); *The MASON LYKES,* 768 F.2d at 668. The rule has been applied even when the cargo did not suffer any immediate physical damage in the collision. *E.g., The Toluma, supra; The MASON LYKES, supra.* This rule is founded on the notion of a "common venture," according to which ship and cargo share by law in certain of the risks, rights, and responsibilities of a voyage; the law of general average is the context in which the "common venture" concept most often arises.

*Id.* at 1297.

In the case at bar, Margarine and Unimills urge that we extend this doctrine by declaring the commencement of the common venture to be the time the chartered vessel departs, pursuant to the charter, to pick up the cargo. Under the rule, as appellants would have it extended, they would be permitted to seek damages in tort for all reasonable delays occasioned by the collision. While the invitation is not without appeal, it is inconsistent with this circuit's view of *Robins Dry Dock* as enunciated in *TESTBANK.*[4]

Further, the extension appellants seek does violence to the essence of the notion of common venture between cargo and carrier, because prior to the time the cargo is loaded there is no sharing of risks of the sea and of the obligation of general average.[5] In summarizing the common venture exception to *Robins Dry Dock,* the *Cargill* court presciently foresaw the instant case, and stated:

> It is difficult to imagine a context in which the special legal notion of a "common venture" could have any application before the cargo was loaded on the ship. *Cf.* 2A *Benedict on Admiralty* § 35 at 4–17 (6th ed. 1985). In the present case, where the alleged negligence in repairing the SERENA's engine occurred before she was chartered to Cargill and before Cargill's grain was loaded, application of the "common venture" notion would emasculate *Robins Dry Dock.* Even if the traditional rule—permitting cargo to proceed directly against a non-carrying tortfeasor for damages arising from an injury to the carrying ship—were extended to non-collision cases, an extension that we do not here adopt or endorse, that rule can have no application where the tort to the carrying ship took place before the cargo was loaded. This case

---

tion occurs when economic harm is done and may produce an unending sequence of financial effects best dealt with by insurance, or by contract, or by other business planning devices [citations omitted].

**4.** Although the writer personally continues to adhere to the views expressed in the *TESTBANK* dissent, the rule announced by the majority is the rule to be applied in this circuit.

**5.** The law of general average applies only when cargo and the vessel are exposed to a common, imminent peril of the sea, requiring loss to the cargo or vessel in order to save the voyage. F. Maraist, *Admiralty in a Nutshell* 134 (1983); G. Gilmore & C. Black, *The Law of Admiralty* 244–47 (2d ed. 1975) (*quoting Barnard v. Adams,* 51 U.S. (10 How.) 270, 13 L.Ed. 417 (1850)).

is therefore governed by *Robins Dry Dock* rather than by *The TOLUMA* or *The MASON LYKES.* 785 F.2d at 1297–98. While the absence of a charter in *Cargill* distinguishes that decision from today's case, its rationale is fully applicable. Accordingly, we hold that the rule of *Robins Dry Dock* precludes a cargo-owner from suing a tortfeasor for economic damages arising out of a collision with the vessel chartered to carry the cargo, prior to the time the cargo is loaded.

## 2. Contract claims

■ Unimills and Margarine contend that even though they are foreclosed from advancing a tort action they should be permitted to sue in contract for the BARBRO's failure to receive and deliver the cargo as per their contract. Because the charter excused the BARBRO and her owners from liability arising from the negligence of other parties, as well as from the negligence of its master and crew in navigation, that claim, too, founders. Paragraph 35 of the voyage-charter provides in pertinent part:

> Owners shall be bound before and at the beginning of the voyage to exercise due diligence to make the ship seaworthy and to have her properly manned, equipped and supplied and neither the vessel nor the Master or Owners shall be or shall be held liable for any loss or damage *or delay* to the cargo for causes excepted by the U.S. Carriage of Goods by Sea Act, 1936 or the Canadian Water Carriage of Goods Act, 1936 (emphasis added).

The Carriage of Goods by Sea Act (COGSA), 46 U.S.C. §§ 1300–15, was enacted to guarantee certain minimum protections to small shippers considered to be at a bargaining disadvantage with carriers.[6] By its express terms, COGSA does not cover charter parties, 46 U.S.C. § 1305, presumably because one chartering an entire vessel enjoys sufficient bargaining clout to resist overreaching by the shipowner. But although COGSA does not apply to charter parties, it does apply to bills of lading

issued under the charter party, and the contracting parties may stipulate to its applicability. The above quoted language incorporated COGSA's exceptions from liability into the charter of the BARBRO.

The incorporated statutory exceptions make it abundantly clear that Unimills is precluded from any recovery herein from the BARBRO. Section 1304(2) provides that:

> Neither the carrier nor the ship shall be responsible for loss or damage arising or resulting from—
>
> (a) Act, neglect, or default of the master, mariner, pilot, or the servants of the carrier in the navigation or in the management of the ship;
>
> \*   \*   \*   \*   \*   \*
>
> (q) Any other cause arising without the actual fault and privity of the carrier and without the fault or neglect of the agents or servants of the carrier. . . .

It is clear from the record that the collision resulted from the fault of the BARBRO, the OBELIX, or both. Any fault on the part of the BARBRO was in the navigation or management of the ship, and recovery would be barred by § 1304(2)(a). Further, to the extent the BARBRO was prevented from accepting the cargo timely because of the fault of the OBELIX, § 1304(2)(q) intervenes. Therefore, as a matter of law, there can be no recovery against the BARBRO for breach of the charter party.

■ Appellants argue that the COGSA exceptions should not apply until the cargo was loaded, citing § 1301(e). Were COGSA applicable by law this argument would be persuasive. However, the parties are free to contract as they wish, and in this instance they chose to apply the COGSA exceptions to the entire term of the charter. Had the parties incorporated the entirety of COGSA, a more difficult issue would have been presented, one which we do not today answer. The parties opted to include only COGSA's mutual exceptions

---

6. Prior to the passage of COGSA, Congress began addressing the problem in the Harter Act,

46 U.S.C. §§ 190 *et seq.*, which remains in effect where COGSA does not apply.

from liability. Those exceptions were made applicable for the entirety of the charter period, not just when the cargo was in transit. *See United States v. M/V Marilena P,* 433 F.2d 164 (4th Cir.1969) (where time charter specifically incorporated COGSA's provisions from § 1304(1), (2), and (3), those provisions controlled for the entire term of the charter, not just from loading and unloading; *compare Watermill Export, Inc. v. M/V PONCE,* 506 F.Supp. 612, 1981 A.M.C. 2457 (S.D.N.Y.1981); *In re Complaint of Norfolk, B & C Line, Inc.,* 478 F.Supp. 383, 1981 A.M.C. 496 (E.D.Va.1979) (COGSA incorporated in its entirety where charter provides that it is "subject to" the statute)). We conclude that the COGSA exceptions made applicable by the charter governed at the time of the collision in this case, and preclude any claims against the BARBRO and her owners under the charter party.

Because the claims in tort of Margarine and Unimills are barred by the rule of *Robins Dry Dock,* and the exclusions in the charter party preclude, as a matter of law, any recovery under that contract, the district court correctly granted summary judgment against Unimills and Margarine. Its decision is AFFIRMED.