**J/O EBONY K/S and J/O Management A/S, Plaintiffs,**

v.

**DREDGE STUYVESANT, et al., Defendants.**

Civ. A. No. 90–2943.

United States District Court, S.D. Texas, Houston Division.

Oct. 15, 1992.

Robert C. Davee, Eastham, Watson, Dale & Forney, Houston, Tex., for plaintiffs.

Robert S. DeLange, Royston, Rayzor, Vickery & Williams, Galveston, Tex., for defendants.

MEMORANDUM AND ORDER

WERLEIN, District Judge.

Pending before the Court is a Motion for Partial Summary Judgment (Document No. 9) filed by Plaintiffs J/O Ebony K/S and J/O Management A/S seeking dismissal of that portion of the Defendants' Cross–Claim that seeks recovery of lost income during the period when Defendants' dredge ship STUYVESANT was out of service for permanent repairs. Defendants are Dredge STUYVESANT, her engines, tackle, apparel, etc., Carlisle Dredging Company ("Carlisle"), and Dredge Operators, Inc. Stuyvesant Dredging Company has joined with Defendants Carlisle Dredging Company and Dredge Operators, Inc., in a Counterclaim/Cross-claim against Plaintiffs.

### Background

This litigation arises out of a collision between Plaintiffs' 15,200 gross ton chemical tanker LAKE ANINA, Defendants 7,111 gross ton dredge ship STUYVESANT. The collision occurred in the early hours of September 11, 1990, in the Houston/Galveston Ship Channel. The LAKE ANINA was bound from Houston to sea, and she was proceeding down the outer bar leg of the channel between the Galveston Jetties. The dredge ship STUYVESANT was also outbound, en route from her dredging area to her spoil dumping area in the Gulf of Mexico; but she was proceeding outside the channel on a course which took her into the channel abeam of the LAKE ANINA, where the collision occurred. The starboard side of the STUYVESANT contacted the port side of LAKE ANINA, and as a result both ships sustained damage. Both required temporary repairs in order to remain in service. Permanent repairs on each were deferred to owner's convenience.

Plaintiffs filed this action seeking recovery of the cost of temporary and permanent repairs to the LAKE ANINA, plus incidental expenses and losses. Defendants answered and, along with intervenor Stuyvesant Dredging Company, filed their counterclaim/cross-claim against Plaintiffs seeking recovery of the cost of temporary and permanent repairs on the STUYVESANT. Stuyvesant Dredging Company was the charterer of the STUYVESANT from Carlisle, and alleged that it suffered losses by virtue of the STUYVESANT having been out of service during the time that permanent collision repairs were being made.

Plaintiffs' Motion for Partial Summary Judgment is confined to the claim of Stuyvesant Dredging Company for loss of use during the period that permanent repairs were made to the STUYVESANT. The summary judgment evidence is undisputed that permanent repairs were initiated on the STUYVESANT on October 8, 1990, and were completed on November 3, 1990. The STUYVESANT began its next job on November 28, 1990.

The summary judgment evidence is undisputed that Carlisle was the owner *pro hac vice* of the vessel, and that Stuyvesant Dredging Company under a time charter was required to pay Carlisle charter hire pursuant to a "hell or high water" clause. In short, Stuyvesant Dredging Company was not relieved of its responsibility for paying charter hire because the dredge was out of service and undergoing permanent repairs between October 8, 1990 and November 3, 1990. The owner Carlisle therefore had no loss of use or loss of income during the repair period and asserts no claim for loss of use. But Stuyvesant Dredging Company, which was obliged to continue paying its charter hire to the owner, does claim damages for loss of use during the permanent repair period. Plaintiffs' Motion for Partial Summary Judgment is founded on the premise that Stuyvesant Dredging Company "did not suffer any monetary loss while permanent repairs were being made for the simple reason that the STUYVESANT had no employment during that time. The vessel would have earned no income during such period even if the vessel had suffered no collision damage." Plaintiffs' Motion for Partial Summary Judgment, at 2–3. In its First Amended Response to Plaintiffs' Motion for Partial Summary Judgment, Stuyvesant Dredging Company withdrew its previ-

ous claim that the STUYVESANT would have, been in use beginning November 20, 1990, and states that Stuyvesant Dredging Company is not required to prove that there was "work for the dredge during the lay up period for permanent repairs in order to recover the charter hire it paid Carlisle." Thus, Stuyvesant Dredging Company opposes the motion on the basis that it was a time charterer that was required by a "hell or high water" clause to pay charter hire to the vessel owner during the lay up period, and that it is therefore entitled to recover that sum under the doctrine of "equitable subrogation." Defendant Stuyvesant Dredging Company's First Amended Response to Plaintiff's Motion for Partial Summary Judgment, at 3.

## Discussion

Rule 56(c) provides that "[summary] judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). A party seeking summary judgment bears the initial burden of informing the district court of the basis for its motion, and identifying those portions of the pleading, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The moving party has the burden of showing that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Williams v. Adams*, 836 F.2d 958, 960 (5th Cir.), *reh. denied, en banc*, 844 F.2d 788 (1988).

■ Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted. *See Celotex*, 477 U.S. at 324–25, 106 S.Ct. at 2553–54. A party opposing a properly supported motion for summary judgment may not rest upon mere allega-

tions or denials of his pleading, but must set forth specific facts showing the existence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256–57, 106 S.Ct. 2505, 2514–15, 91 L.Ed.2d 202 (1986). Assertions unsupported by facts are insufficient to oppose a motion for summary judgment. *Williams v. Weber Management Services, Inc.*, 839 F.2d 1039, 1041 (5th Cir.1987). There must be evidence giving rise to reasonable inferences that support the nonmoving party's position. *St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir.1987). Bare or mere allegations are insufficient. *Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.*, 831 F.2d 77, 79 (5th Cir.1987).

■ Plaintiffs insist that because the STUYVESANT was already out of service when the collision repairs were made, Stuyvesant Dredging Company suffered no economic loss from loss of use of the vessel during the repair period and therefore suffered no compensable damage. And indeed, as mentioned, Stuyvesant Dredging Company has abandoned its earlier effort to demonstrate any actual loss of use that the STUYVESANT suffered during and just following the few weeks required for its permanent repairs. The controversy boils down to a dispute of law.

Stuyvesant Dredging Company relies principally on *Venore Transportation Company v. The Struma*, 583 F.2d 708 (4th Cir.1978). In that case the Fourth Circuit carved out an exception to the general rule stated by Justice Holmes in *Robin's Dry Dock and Repair Co. v. Flint*, 275 U.S. 303, 48 S.Ct. 134, 72 L.Ed. 290 (1927). Both cases deserve attention.

In *Robin's Dry Dock* the steamer was to be docked at least once in every six months, during which period the payment of the charter party hire was to be suspended until the vessel was again in proper repair for service. During such a period when the vessel was docked, the propeller was so injured by the repair company's negligence that a new one had to be put in, which caused the delay for which the suit was brought. The charterer contended that the delay in making the repairs result-

ed in a loss of use to the charterer with resulting damages.

■ The Supreme Court denied recovery to the charterer, holding that, as a general rule, "a tort to the person or property of one man does not make the tortfeasor liable to another merely because the injured person was under a contract with that other unknown to the doer of the wrong." 275 U.S. at 309, 48 S.Ct. at 135. Thus, while the owner of the vessel would have been entitled to recover for detainage against the negligent repair company, the repair company was not liable for consequential damages to a charterer based upon its interest in the vessel derived through its charter with the owner. Thus, under *Robin's Dry Dock*, one must show a physical damage to the vessel in which the claimant has a proprietary interest in order to recover for economic loss in a case of unintentional maritime tort. The Fifth Circuit not long ago reaffirmed this principle in *State of Louisiana v. M/V Testbank*, 752 F.2d 1019 (5th Cir.1985) (*en banc*); *see also, Mathiesen v. M/V OBELIX*, 817 F.2d 345 (5th Cir.1987).

The exception declared by the Fourth Circuit in *Venore Transportation Co., supra*, involved a time charter where the charterer was required to pay hire even during breakdown periods. This was the same kind of "hell or high water" clause that exists in the case at bar. Because of such clause, the owner of the vessel in *Venore Transportation Co.*, as here, suffered no detention damages. The charterer was required to pay the hire throughout the period of repair. This led the Fourth Circuit to adopt a "pragmatic approach," requiring the offending vessel to pay for loss of use of the damaged vessel once but no more. It viewed the charterer as standing in the shoes of the owner, and held that either the owner or the time charterer, but not both, may claim damages for loss of use depending upon the parties' placement of the risk of loss of use. Under that set of facts, where the owner had no loss, the charterer was held entitled to recover the sum that the owner otherwise would have been entitled to recover.

There is nothing remote about these damages; the only objection is that they were suffered by the time charterer rather than by the owner. 583 F.2d at 711. The charterer was not entitled to recover its lost profits, but only the "traditional item of recoverable damage," namely, the owner's claim for loss of use. *Id.*

The clear implication of *Venore Transportation Co.*, however, is that the charterer did suffer a loss of use. There is no suggestion whatever that there was not an *actual* loss of use of the vessel suffered by the charterer. In fact, the court variously refers to a payment "for the *loss of use* of the OSWEGO LIBERTY," states that there is "nothing remote about these *damages*," observes that these damages "*were suffered* by the time charterer rather than by the owner," and insists that the Court does not "enlarge in any way the types of *damages* which have been traditionally recoverable...." *Id.* at 710–711. (Emphasis added.) An underlying principle of the case is that the owner "could not claim a loss it had not suffered." *Id.* at 710. And because the charterer rather than the owner suffered the actual loss of use, the charterer was adjudged entitled to recover the amount that otherwise would have been recoverable by the owner, under a doctrine of equitable subrogation.

■ The case law on this subject treats as fundamental the requirement that an actual loss must occur before a claimant can obtain loss of use damages. *Dow Chem. Co. v. M/V ROBERTA TABOR*, 815 F.2d 1037, 1042 (5th Cir.1987), is close in point. It involved a charterer's claims for loss of use of its chartered barges while they were repaired. As in the instant case, the charterer during the period of repair was obligated to continue to pay charter hire on the damaged barges. The charterer contended, as here, that the proper measure of damages would be the charter hire paid by the charterer for the damaged barges while they were being repaired. The charterer, which used the barges exclusively to move its product from one place to another, failed to prove that it had

no other barge capacity with which to move its product during the period that its damaged barges were being repaired. *Id.* at 1042. The Court held that even though the charterer "was obligated to continue to pay charter hire on the damaged barges," its failure to demonstrate that it had no extra barges with which to move its product while the damaged barges were being repaired was a sufficient reason to deny recovery for loss of use. *Id.* at 1042–43. In other words, actual economic loss, not just a "deemed" loss of use, was required to be proved in order to recover damages.

In *Bolivar County Gravel Co. v. Thomas Marine Co.,* 585 F.2d 1306 (5th Cir. 1978), the owner of a damaged dredge was adjudged on summary judgment not to be entitled to loss of use during the ten days it took to repair the dredge. The Fifth Circuit affirmed, finding that there was "no evidence that the plaintiff lost any sales, revenues, or potential customers, nor is there any evidence that it incurred any increased operating expenses." *Id.* at 1307. In that case the dredge was used to obtain gravel. During the repair period the owner's stockpile of gravel was sufficient, and after repairs were completed the owner readily replenished its stockpile to previous levels. Thus, the Court wrote:

> It [plaintiff] is today in the same position it would have been had the accident not occurred—its stockpile is at the same level, it has made the same sales, and it has the same amount of gravel left in the ground. Furthermore, it has not shown that the effort required to replenish the stockpile resulted in any expenses over what it would have otherwise incurred.

> \* \* \* \* \* \*

> All that the plaintiff suffered as a result of the loss of 10 days production time was a temporary reduction in the size of its surplus stockpile, a reduction that resulted in no economic injury.

*Id.* at 1309.

The Fifth Circuit in *Bolivar County Gravel Co.* cited *The Conqueror,* 166 U.S. 110, 17 S.Ct. 510, 41 L.Ed. 937 (1897), for the rule that detention damages are allowed when profits have actually been lost, or have reasonably been shown to have been lost, and the amount of such profits has been proved with reasonable certainty. *Id.* at 1308, n. 2. *The Conqueror,* in turn, reports one of the earliest English cases on this subject, *The Clarence,* 3 W. Rob. 283, from which it quotes the following passage:

> '[I]n order to entitle a party to be indemnified for what is termed in this court a consequential loss, being for the detention of his vessel, two things are absolutely necessary—actual loss, and reasonable proof of the amount.... It does not follow, as a matter of necessity, that anything is due for the detention of a vessel whilst under repair. Under some circumstances, undoubtedly such a consequence will follow, as, for example, where a fishing voyage is lost, or where the vessel would have been beneficially employed.'

166 U.S. at 125, 17 S.Ct. at 516; *see also, Brooklyn Eastern Terminal v. United States,* 287 U.S. 170, 53 S.Ct. 103, 77 L.Ed. 240 (1932) (disallowing damages for loss of use of damaged tug when tug owner's other two tugs were able to perform the work of the damaged tug); *Delta S.S. Lines v. Avondale Shipyards, Inc.,* 747 F.2d 995, 1009 (5th Cir.1984) ("The burden of proving the extent of damages actually sustained [during detention] is on the vessel owner."); *Skou v. United States,* 478 F.2d 343 (5th Cir.1973) ("The burden is upon the shipowner to prove the extent of damages actually sustained by him [during detention].")

Indeed, Stuyvesant Dredging Company has cited no case awarding damages for loss of use to a charterer of a vessel which, according to the established evidence, would not actually have been in use during the period of detention. Such a notion is simply foreign to the underlying premise of the admiralty cases on this subject. A recovery by an owner or charterer for loss of use of a vessel which was not needed and would not have been in use in any event would amount to a windfall. Here, if such were allowed, the charterer would be in a 100% better position than it would have been in had the collision not occurred. The

theory of compensatory damages for losses actually sustained would be turned upside down.

■ The summary judgment evidence, and the concessions made by Stuyvesant Dredging Company in its amended response, plainly establish that the STUYVESANT was out of service through the period of permanent repair and until November 28, 1990. It was out of service not because of the collision, or because of the permanent repairs that were made during that period of time, but rather because it had no work to perform until its next job began on November 28, 1990. If an unintentional maritime tortfeasor has no liability for real and actual economic losses sustained by a charterer under the rule of *Robin's Dry Dock*, certainly it can have no liability to a charterer for a hypothetical loss of use of a vessel for which the charterer itself has no use during the period of detention. The fact that the charterer had obligated itself to a "hell or high water" charter clause with the vessel's owner is no reason under these facts to shift the burden of that obligation from the charterer to the unintentional tortfeasor.

Accordingly, the motion for partial summary judgment filed by Plaintiffs J/O Ebony K/S and J/O Management A/S is GRANTED, and that portion of Defendants' and Stuyvesant Dredging Co.'s counterclaim/cross-claim that seeks recovery of loss of income during the period when the dredge ship STUYVESANT was out of service for permanent repairs, will be DISMISSED on the merits.

JUDGMENT will be entered accordingly.