09-4726-cv
G&G Steel, Inc. v. Sea Wolf Marine Transp., LLC

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 10ᵗʰ day of June, two thousand ten.

PRESENT: JON O. NEWMAN,
REENA RAGGI,
PETER W. HALL,
*Circuit Judges.*

-----------------------------------------------------------------------
G&G STEEL, INC.,
*Plaintiff-Appellant*,

v.                                                    No. 09-4726-cv

SEA WOLF MARINE TRANSPORTATION, LLC,
*Defendant-Appellee.*
-----------------------------------------------------------------------

APPEARING FOR APPELLANT: FRANK E. DE GRIM, Luboja & Thau, LLP, New York, New York.

APPEARING FOR APPELLEE: GARTH S. WOLFSON, Mahoney & Keane, LLP, New York, New York.

Appeal from the United States District Court for the Southern District of New York

(Charles S. Haight, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the district court entered on October 28, 2009, is AFFIRMED.

Plaintiff G&G Steel, Inc. ("G&G"), appeals from an award of summary judgment in favor of defendant Sea Wolf Marine Transportation, LLC, ("Sea Wolf") on G&G's claims of negligence and breach of maritime contract.[1] In particular, G&G submits that the district court erred in concluding that its claims were foreclosed by the rule announced in Robins Dry Dock & Repair Co. v. Flint, 275 U.S. 303 (1927), because (1) G&G raised triable issues of fact as to whether it possessed a proprietary interest in the subject vessel, and (2) its claims fall within the loss-shifting exception to the rule. We review a summary judgment award de novo, viewing the facts in the light most favorable to the non-moving party. See Havey v. Homebound Mortgage, Inc., 547 F.3d 158, 163 (2d Cir. 2008). While we will not uphold an award in favor of the defendant if the evidence is sufficient to permit a reasonable jury to find for the plaintiff, the plaintiff must point to more than a scintilla of evidence in support of its claims to defeat summary judgment. See id.; see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). In applying these standards, we assume the parties' familiarity with the facts and the record of prior proceedings, which we reference only as necessary to explain our decision to affirm.

---

[1] Although Sea Wolf moved for dismissal pursuant to Fed. R. Civ. P. 12(b)(6), the district court converted the motion to one for summary judgment under Fed. R. Civ. P. 56.

1.    Proprietary Interest

G&G contends that its obligation to "maintain the MARMAC [400] in a good and seaworthy condition" and to pay certain expenses relating to the use and insurance of the vessel give rise to a proprietary interest sufficient to render the Robins Dry Dock rule inapplicable.  Appellant's Br. at 9.  We are not persuaded.

In Robins Dry Dock, the Supreme Court held that "a tort to the person or property of one man does not make the tort-feasor liable to another merely because the injured person was under a contract with that other unknown to the doer of the wrong."  275 U.S. at 309. The ruling effectively bars recovery for economic losses caused by an unintentional maritime tort absent physical damage to property in which the victim has a proprietary interest.  See Federal Commerce & Navigation Co., Ltd. v. M/V MARATHONIAN, 528 F.2d 907, 908 (2d Cir. 1975); Agwilines, Inc. v. Eagle Oil & Shipping Co., 153 F.2d 869, 871-72 (2d Cir. 1946) (L. Hand, J.); Conti Corsi Schiffahrts-GMBH & Co. KG NR. 2 v. M/V "PINAR KAPTANOGLU", 414 F. Supp. 2d 443, 446-47 (S.D.N.Y. 2006) (discussing "bright line rule" established by consistent application of Robins Dry Dock).

To establish a proprietary interest, G&G was required to show that it had "actual possession or control, responsibility for repair and responsibility for maintenance" of the MARMAC 400.  IMTT-Gretna v. Robert E. Lee SS, 993 F.2d 1193, 1194 (5th Cir. 1993); see also Gas Natural SDG S.A. v. United States, No. 04 Civ. 8370, 2007 WL 959259, at *3 (S.D.N.Y. Mar. 22, 2007); MTA Metro-North R.R. v. Buchanan Marine, L.P., No. 05 Civ.

3

881, 2006 WL 3655244, at *6 (D. Conn. Dec. 12, 2006) (noting that "[a]ctual ownership or title is not necessary to demonstrate that a proprietary interest exists"). The record evidence does not permit such a finding.

Under the terms of the relevant charter party, the owner of the MARMAC 400 bore responsibility for carrying and paying for "Hull and Protection and Indemnity insurance" in the amount of $8.5 million and $5 million, respectively, while G&G agreed to pay a $50,000 deductible on any "Hull" or "Protection and Indemnity" claim and "to provide and carry Comprehensi[ve] General Liability [insurance]." May 6, 2004 Time Charter Party. In the event of a "total or constructive total loss" of the vessel, G&G was not obligated to continue paying charter hire but only timely to notify the owner and all insurers of such loss. Id.

Thus, while G&G certainly had possession and control of the vessel, its responsibility for repair and maintenance was minimal at best. "Hull" and "Protection and Indemnity" insurance, which were carried by the vessel owner, cover collision-related losses flowing from damage to the vessel or other fixed and floating objects, as well as losses stemming from injury to crew members or others on board. Comprehensive General Liability insurance such as that carried by G&G, by contrast, provides only generalized protection from liability relating to an entity's business operations. The nature of these insurance policies alone indicates that the owner of the MARMAC 400, not G&G, retained primary responsibility for maintaining the overall integrity of the vessel.

4

Although G&G was required to (1) pay a deductible on those claims for which it did not provide insurance, (2) "maintain the [MARMAC 400] in a good and seaworthy condition during the term of the charter, . . . fair wear and tear excepted," id., (3) bear any costs incurred by the owner in restoring the vessel to such condition, and (4) cover any expenses incident to its particular use of the MARMAC 400, these standard charter obligations are insufficient to demonstrate the requisite proprietary interest in the vessel. See Texas E. Transmission Corp. v. McMoRan Offshore Exploration Co., 877 F.2d 1214, 1225 (5th Cir. 1989) (concluding that oil company lacked proprietary interest in damaged pipeline where it conducted "routine maintenance, consisting of the painting, cleaning, and inspecting of [appurtenances to the pipeline]," but was not responsible for performing repairs on pipeline when damaged); compare McLean Contracting Co. v. Waterman S.S. Corp., 131 F. Supp. 2d 817, 820-21 (E.D. Va. 2001) (concluding that where demise charterer had "charge and care" of trestle and was obligated to make any repairs to trestle until state gave final approval of project, it had proprietary interest in trestle rendering application of Robins Dry Dock rule improper); In re Moran Enters. Corp., 77 F. Supp. 2d 334, 341 (E.D.N.Y. 1999) (finding triable issue of fact as to plaintiff's proprietary interest in cable damaged by vessel where plaintiff and third party jointly contracted and paid for construction and installation of cable, maintained single insurance policy, and shared cost of environmental harm from or damage to cable, regardless of location of harm or damage).

5

2. Loss-Shifting Exception

Equally unpersuasive is G&G's contention that, even if it lacks a proprietary interest in the MARMAC 400, dismissal of its claims was improper because the charter agreement shifted the risk of loss from the vessel owner to G&G. Even the courts that recognize a loss-shifting exception to the Robins Dry Dock rule would not do so in this case. G&G relies upon Amoco Transportation Co. v. S/S MASON LYKES, 768 F.2d 659 (5th Cir. 1985), Venore Transport Co. v. M/V STRUMA, 583 F.2d 708 (4th Cir. 1978), and Nexen Petroleum U.S.A., Inc. v. Sea Mar Division of Pool Well Services Co., 497 F. Supp. 2d 787 (E.D. La. 2007). The Fifth Circuit has recently limited its holding in Amoco, expressly restricting any exceptions to Robins Dry Dock to cases where two vessels collide and the action is by the charterer of one vessel against the other, negligent vessel. See Norwegian Bulk Transp. A/S v. Int'l Marine Terminals P'ship, 520 F.3d 409, 412-13 (5th Cir. 2008) ("In the collision context, . . . the vessel owner and the cargo owners were engaged in a common venture, in which they shared the risks of the voyage, and thus the cargo owners could recover economic losses."). And although the Fourth Circuit has not made the limits of its loss-shifting exception so explicit, it did, in announcing the exception, find it necessary to distinguish Robins Dry Dock by pointing out that "Robins Dry Dock was not a case arising out of a collision." Venore Transp. Co. v. M/V STRUMA, 583 F.2d at 709.

As the present case involves an allision, not a collision, we find no basis for recognizing a loss-shifting exception here. This remains a conventional case for application

6

of the <u>Robins Dry Dock</u> rule, and it is indistinguishable from cases in which circuits that recognize loss-shifting have continued to apply the usual rule.  <u>See, e.g.</u>, <u>Norwegian Bulk Transp. A/S v. Int'l Marine Terminals P'ship</u>, 520 F.3d at 410-11, 414 (declining to award cost of extra charter hire to charterer where vessel was damaged while in defendant's dry dock and was consequently returned late to its owner, incurring approximately 15 extra hours of charter hire).  Absent any indication that the charter agreement contractually shifted to G&G the risk of any losses, the district court properly concluded that G&G's claims are barred by the <u>Robins Dry Dock</u> rule.

3.    <u>Conclusion</u>

We have considered G&G's remaining arguments on appeal and conclude that they are without merit.  For the foregoing reasons, the October 28, 2009 judgment of the district court is AFFIRMED.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court

7