12-4505-cv
American Petroleum and Transport v. City of New York

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term 2013

Heard: August 27, 2013          Decided: December 6, 2013

Docket No. 12-4505-cv

- - - - - - - - - - - - - - - - - - - - - - - - - -

AMERICAN PETROLEUM AND TRANSPORT, INC.,
    Plaintiff-Appellant,

              v.

CITY OF NEW YORK, DEPARTMENT OF TRANSPORTATION
OF THE CITY OF NEW YORK,
    Defendants-Appellees.

- - - - - - - - - - - - - - - - - - - - - - - - - -

Before: NEWMAN, RAGGI, and LYNCH, <u>Circuit Judges</u>.

Appeal from the October 11, 2012, judgment of the United States District Court for the Southern District of New York (Paul A. Engelmayer, District Judge), dismissing a complaint by a vessel owner alleging economic losses for a maritime tort in the absence of property damages.

Affirmed.

> James M. Maloney, Port Washington, NY (Law Office of James M. Maloney, Port Washington, NY, on the brief), for Appellant.

> Michael J. Pastor, Senior Counsel, New York, NY, (Michael A. Cardozo, Corporation Counsel of the City of New York, Kristin Helmers, Corporation Counsel of the City of New York, New York, N.Y., on the brief), for Appellees.

JON O. NEWMAN, Circuit Judge.

The issue on this appeal is whether, under maritime law, an owner of a vessel may be awarded damages for economic loss due to negligence in the absence of physical damage to its property. For many years a number of courts have derived from the Supreme Court's opinion in Robins Dry Dock & Repair Co. v. Flint, 275 U.S. 303 (1927), a "rule" prohibiting such damages. Plaintiff-Appellant American Petroleum and Transport, Inc. ("American") appeals from the October 11, 2012, judgment of the United States District Court for the Southern District of New York (Paul A. Engelmayer, District Judge), granting a motion to dismiss by Defendants-Appellees City of New York and the New York Department of Transportation ("City"). See American Petroleum and Transport, Inc. v. City of New York, 902 F. Supp. 2d 466 (S.D.N.Y. 2012).

Although we conclude that Robins Dry Dock has been overread to establish a rule barring damages for economic loss in the absence of an owner's property damage, we believe the rule has been so consistently applied in admiralty that it should continue to be applied unless and until altered by Congress or the Supreme Court.

Background

American is a corporation in the business of transporting petroleum products by water. At all relevant times, American was the registered owner of a barge, the John Blanche,

-2-

and the demise charterer[1] of a tug, the <u>Caspian Sea</u>.  The City operates a drawbridge, the Pelham Parkway Bridge, over the Hutchinson River.  In March 2011, the tug and the barge, after passing upstream on the Hutchinson River under the opened bridge, requested the City to open the bridge for the downstream voyage. Due to a mechanical malfunction, which American alleges was the result of negligence, the City did not open the bridge, delaying the tug and the barge for approximately two and one-half days.

As a consequence of the delay, American alleges that it suffered $28,828 in economic losses.  American acknowledges that it did not suffer any property damage.

In May 2012, American brought claims against the City for common law negligence and for violation of 33 U.S.C. § 494, which requires that a drawbridge over navigable water "be opened promptly by the persons owning or operating such bridge upon reasonable signal for the passage of boats and other water craft."[2]  In October 2012, the District Court, relying on <u>Robins</u>

---

[1] In a demise or bareboat charter, the charterer is owner <u>pro hac vice</u> of the vessel, and the charterer is treated as the owner of the vessel with a sufficient property interest to recover lost profits.  The demise charter is "tantamount to, though just short of, an outright transfer of ownership." <u>Guzman v. Pichirilo</u>, 369 U.S. 698, 700 (1962).

[2] The District Court ruled that the City's Department of Tansportation was an improper defendant, and American does not challenge that ruling on appeal. See <u>American Petroleum</u>, 902 F. Supp. 2d at 467 n.1.

<u>Dry Dock v. Flint</u>, 275 U.S. 303 (1927), granted the City's motion to dismiss under Fed. R. Civ. P. 12(b)(6). <u>See</u> <u>American Petroleum</u>, 902 F. Supp. 2d at 468-71. The Court stated:

> The issue presented by the City's motion to dismiss is whether the "<u>Robins Dry Dock</u> rule," as the case law has come to refer to it, precludes American from recovery here. American is quite correct that, on its facts, <u>Robins Dry Dock</u> itself does not address the situation here: a claim for economic damages by a vessel's owner (as opposed to a time charterer). However, since that decision, the courts in this Circuit have extracted from it a broader prohibition with respect to maritime tort suits that is fatal to American's negligence claim here.

> Specifically, as the Second Circuit has stated, the <u>Robins Dry Dock</u> rule "effectively bars recovery for economic losses caused by an unintentional maritime tort absent physical damage to property in which the victim has a proprietary interest."

902 F. Supp. 2d at 468-69 (quoting <u>G & G Steel, Inc. v. Sea Wolf Marine Transportation, LLC</u>, 380 Fed. Appx. 103, 104 (2d Cir. 2010) (summary order), and citing <u>Gas Natural SDG S.A. v. United States</u>, No. 07-2129-CV, 2008 WL 4643944, at *1 (2d Cir. Oct. 21, 2008) (summary order)). Although both <u>G & G Steel</u> and <u>Gas Natural</u> were non-precedential summary orders, <u>see</u> 2d R. 32.1.1(a), we had unequivocally stated in the latter decision, "[T]here exists a bright line rule barring recovery for <u>economic losses</u> caused by an unintentional maritime tort absent physical damage to property in which the victim has a <u>proprietary</u>

interest*.*" Gas Natural, 2008 WL 4643944, at *1 (internal quotation marks and citations omitted) (emphases in original).

The District Court also concluded that most Circuits have held that 33 U.S.C. § 494 does not give rise to an implied private right of action. American Petroleum, 902 F. Supp. 2d at 470.

Discussion

In Robins Dry Dock, a dry docking company damaged a propeller on a steamship, rendering the vessel unusable for two weeks. The steamship's time charterer sued the dry dock company to recover its lost profits resulting from the delay. The Supreme Court denied recovery. See Robins Dry Dock, 275 U.S. at 308-10. The Court first ruled that the time charterer could not prevail as a third-party beneficiary of the contract between the vessel owner and the dry docking company. See id. at 307-08. Turning to the time charterer's tort claim, the Court first stated generally that whether the dry dock company repaired the owner's vessel "promptly or with negligent delay was the business of the owners and of nobody else," and more specifically that "[t]he injury to the propeller was no wrong to the [time charterer] but only to those to whom it belonged." Id. at 308. The Court next considered what effect, if any, the charterparty had on the time charterer's claim: "But as there was a tortious damage to a chattel [the propeller of the owner's vessel] it is

sought to connect the claim of the [time charterer] with that in some way." Id. The Court observed that the time charterer's loss "arose only through their contract with the owners," id., and then rejected the time charterer's claim in the passage most often quoted from Robins Dry Dock:

> [A]s a general rule, at least, a tort to the person or property of one man does not make the tort-feasor liable to another merely because the injured person was under a contract with that other unknown to the doer of the wrong. The law does not spread its protection so far.

Id. at 309 (internal citation omitted).[3]

Robins Dry Dock made two explicit rulings. The first ruling – that the time charterer was not the third-party beneficiary of the contract between the vessel owner and the drydocker – has no relevance to the pending case. The drawbridge operator has no contract with anyone. The second ruling was that the fact that the time charterer had a contract with the vessel owner whose property had been damaged by an unintentional tort gave the time charterer no right to recovery of its economic losses. This ruling, which we will call the "narrow ruling" of

---

[3] The Court also rejected the theory, which our Court had used to uphold the time charterer's claim, see Flint v. Robins Dry Dock & Repair Co., 13 F.2d 3, 6 (2d Cir. 1926), that the time charterer should receive an appropriate portion of the damages that the drydocker paid to the owner for loss of use because the owner could have sued on the time charterer's behalf. See Robins Dry Dock, 275 U.S. at 309-10.

<u>Robins Dry Dock</u>, also seems to have no relevance to the pending case: American Petroleum is not grounding its claim for economic losses on a contract between the negligent operator of the drawbridge and some other party whose property was damaged. Therefore, if American Petroleum's claim is barred, as the District Court held, by a <u>Robins Dry Dock</u> "rule" that economic losses cannot be recovered for an unintentional maritime tort in the absence of physical damage to the claimant's property, it must be because either there is some additional broader ruling implicit in that decision, or the narrow ruling has been extended, whether justifiably or not, into a broader ruling.[4]

Justice Holmes's text, however, gives no hint of either an implicit broader ruling or a basis for an extended broader ruling. He stated the <u>Robins Dry Dock</u> rule in narrow terms, explicitly declining to permit recovery just because the claimant has a contract with a party damaged by the tort. "[A]s a general rule, at least, a tort to the person or property of one man does not make the tort-feasor liable to another merely because the injured person was under a contract with that other unknown to

_____

[4] Dissenting in <u>State of Louisiana ex rel. Guste v. M/V TESTBANK</u>, 752 F.2d 1019 (5th Cir. 1985), Judge Wisdom contended that the narrow rule of <u>Robins Dry Dock</u> "has been expanded now to bar recovery by plaintiffs who would be allowed to recover if judged under conventional principles of foreseeability and proximate cause." <u>Id.</u> at 1039 (Wisdom, J., with whom Rubin, Politz, Tate, and Johnson, JJ, join, dissenting) (footnote omitted).

the doer of the wrong." Robins Dry Dock, 275 U.S. at 309. Moreover, the three cases Justice Holmes cited as a "good statement," id., of the "general rule" all involved a claimant seeking recovery because of its contract with the tort victim. See The Federal No. 2, 21 F.2d 313 (2d Cir. 1927)[5]; Elliott Steam Tug Co. v. Shipping Controller, 1 K.B. 127 (1921); Byrd v. English, 117 Ga. 191, 43 S.E. 419 (1903).[6] Nowhere in the text

_____

[5] The Federal No. 2 was "abandoned" by our Circuit in Black v. Red Star Towing & Transportation Co., 860 F.2d 30, 34 (2d Cir. 1988).

[6] In The Federal No. 2, a seaman was injured due to the negligence of a tug whose towing hawser swept the deck of the barge on which he was working. The seaman could have sued for negligence but did not. The owner of the barge was required by its contract with the seaman to provide maintenance and cure, and did so. The barge owner then made a claim against the tug to recover the cost of providing maintenance and cure, i.e., the hospital expenses. We ruled against recovery. After pointing out the barge owner had no right of subrogation, we said that "damage suffered by one whose interest in the party or thing is contractual is too remote for recovery, unless the wrong is done with intent to affect the contractual relations." 21 F.2d at 314. Interestingly, we cited our decision in Robins Dry Dock v. Flint, 13 F.2d 3 (2d Cir. 1926), before it was reversed by the Supreme Court.

In Elliott Steam Tug, a time charterer sued the agency that had requisitioned the vessel, seeking lost profits. In dictum, before the Court upheld a statutory indemnity claim, the Court said that the plaintiff had no claim at common law for injury to its contractual rights. See 1 K.B. at 140.


In Byrd, a printing company lost power for several hours during which it lost profits it could have earned. The loss of power resulted from the excavation of a nearby site, which

of <u>Robins Dry Dock</u> is there a broad statement that economic losses for an unintentional maritime tort are not recoverable in the absence of physical damage to the claimant's property.

A leading treatise on maritime law has candidly acknowledged that the broad rule is not to be found in <u>Robins Dry Dock</u>. Referring to the broad rule, Professor Schoenbaum states, "This is the interpretation <u>accorded to</u> the case of <u>Robins Dry Dock and Repair Co. v. Flint</u>, 275 U.S. 303 (1927)." 1 Thomas J. Schoenbaum, <u>Admiralty and Maritime Law</u> § 5-16, at 317 n.3 (5th ed. 2011) (emphasis added), and also acknowledges that the "Robins Dry Dock holding was later <u>transformed</u> into a bright-line rule against liability for pure economic loss that has been consistently applied in admiralty in a wide variety of contexts . . . ." 2 Schoenbaum, supra § 18-4, at 319 (emphasis added).

Since <u>Robins Dry Dock</u>, the Supreme Court has cited it three times, all without illuminating its meaning. In <u>Aktieselskabet Cuzco v. The Sucarseco</u>, 294 U.S. 394, 404 (1935), the Court only distinguished the narrow contract rule of <u>Robins Dry Dock</u>. In <u>Caldarola v. Eckert</u>, 332 U.S. 155, 158 (1947), it

caused a quantity of earth to fall on underground conduits through which an electric company's power lines ran. The plaintiff sued the company doing the excavating, relying on the plaintiff's contract with the company that supplied electric power. The Court rejected the claim, ruling that the wrong was done to the power company, and that the plaintiff had only a claim against the power company, not the excavating company. <u>See</u> 43 S.E. at 420-21.

simply noted that no claim was made under the narrow contract rule of Robins Dry Dock.  The third case, East River Steamship Corp. v. Transamerica Delaval, Inc., 476 U.S. 858 (1986), was a products liability ruling, made under maritime law.  The Court's narrow holding was that "a manufacturer in a commercial relationship has no duty under either a negligence or strict products-liability theory to prevent a product from injuring itself."  Id. at 871.  Notably, the Court explicitly left open the question whether a broad rule is to be derived from Robins Dry Dock:

> We do not reach the issue whether a tort cause of action can ever be stated in admiralty when the only damages sought are economic. Cf. Ultramares Corp. v. Touche, 255 N.Y. 170, 174 N.E. 441 (1931).  But see Robins Dry Dock & Repair Co. v. Flint, 275 U.S. 303 (1927).

East River, 476 U.S. at 871 n.6.

Two opinions of Courts of Appeals have thoughtfully endeavored to explain why the broad rule attributed to Robins Dry Dock exists: State of Louisiana ex rel. Guste v. M/V TESTBANK, 752 F.2d 1019, 1022 (5th Cir. 1985) (in banc), and Barber Lines A/S v. M/V Donau Maru, 764 F.2d 50 (1st Cir. 1985).

The argument that such a broad rule is implicit in the narrow rule that Justice Holmes stated was expressed by Judge Higginbotham for the 10-5 majority of the in banc court in Guste. Guste involved numerous claims for economic losses suffered as

-10-

a result of the temporary closing of the Mississippi River Gulf outlet because of chemicals that had spilled into the outlet after a collision of two vessels. None of the plaintiffs claimed to have had a contract with either of the vessels involved in the collision.[7] After noting the plaintiffs' attempt to limit <u>Robins Dry Dock</u> to claimants relying on a contract with the victim of a maritime tort, Judge Higginbotham seemed to find the broader rule implicit in what he terms Justice Holmes's "delphic" opinion. <u>Guste</u>, 752 F.2d at 1022. Judge Higginbotham stated:

> If a time charterer's relationship to its negligently injured vessel is too remote, other claimants without even the connection of a contract are even more remote.

752 F.2d at 1023.

For Judge Higginbotham, the rationale animating the narrow rule of <u>Robins Dry Dock</u> was the avoidance of recovery for losses thought to be too remote from a defendant's negligence, from which he reasoned that claimants without a contract to a party suffering a tort are more remote than claimants with a contract. Although we agree that remoteness of losses is always relevant to tort recoveries, a concept usually expressed in terms of the extent of the tortfeasor's duty, <u>see</u> <u>Palsgraf v. Long Island R.R.</u>, 248 N.Y. 339, 162 N.E. 99 (1928), or foreseeability

---

[7] The opinion does not indicate which vessel was considered the maritime tort victim, perhaps because negligence was apportioned between the two colliding vessels.

-11-

or proximate cause, see In re Kinsman Transit Co. ("Kinsman II"), 388 F.2d 821, 823 (2d Cir. 1968),[8] we are not as sure as Judge Higginbotham that the losses of a claimant without a contract with a tort victim are inevitably more remote from the tort than the losses of those with such a contract.[9] Even if the drydocker

_____

[8] "In the final analysis, the circumlocution whether posed in terms of 'foreseeability,' 'duty,' 'proximate cause,' 'remoteness,' etc. seems unavoidable." Kinsman II, 388 F.2d at 825.

[9] In dissent, Judge Wisdom has endeavored to refute Judge Higginbotham's argument that a claim for economic losses in the absence of a contract with the tort victim is inevitably less meritorious than a claim invoking such a contract:

> This argument would be sound in instances where the plaintiff suffered no loss but for a contract with the injured party. We would measure a plaintiff's connection to the tortfeasor by the only line connecting them, the contract, and disallow the claim under Robins [Dry Dock]. In the instant case [involving an economic loss resulting from a collision of two ships producing an oil spell that blocked a Mississippi outlet to all shipping], however, some of the plaintiffs suffered damages whether or not they had a contractual connection with a party physically injured by the tortfeasor. These plaintiffs do not need to rely on a contract to link them to the tort: The collision proximately caused their losses, and those losses were foreseeable. These plaintiffs are therefore freed from the Robins [Dry Dock] rule concerning the recovery of those who suffer economic loss because of an injury to a party with whom they have contracted.

Guste, 752 F.2d at 1040 (Wisdom, J., with whom Rubin, Politz, Tate, and Johnson, JJ, join, dissenting).

in <u>Robins Dry Dock</u> could not reasonably foresee that the vessel owner would charter his vessel, which strikes us as an unlikely supposition, the drawbridge operator in the pending case could surely have expected that its negligent delay in opening the bridge for a vessel not chartered would likely cause economic losses.

Judge Higginbotham also explained <u>Robins Dry Dock</u> as based on "a principle . . . which refused recovery for negligent interference with 'contractual rights,'" <u>Guste</u>, 752 F.2d at 1022, and on what he called the "well established" principle "that there could be no recovery for economic loss absent physical injury to a proprietary interest," <u>id.</u> at 1023.  Although this principle has been articulated by distinguished torts commentators, <u>see</u>, <u>e.g.</u>, 4 Fowler V. Harper, Fleming James, Jr., Oscar S. Gray, <u>The Law of Torts</u> § 25.18A, at 619 (2d ed. 1986), these same commentators have noted that "[c]ourts are, however, beginning to disclaim the existence of any such 'absolute rule,' and to refer instead to the applicability of pragmatic considerations," <u>id.</u> at 619-20 n.1, and have more recently observed that the "rule" is permeated with numerous exceptions, <u>see</u> <u>id.</u> at 326 n. 9a (cumulative supp. 2005).  Several of these exceptions are catalogued in <u>Union Oil Co. v. Oppen</u>, 501 F.2d 558, 565-68 & n.9 (9th Cir. 1974).

Barber Lines, like Guste, also involved an oil spill caused by a ship's negligence, this one causing economic losses to a vessel delayed from docking at its assigned berth. Unlike Judge Higginbotham, however, then-Judge Breyer did not contend that the rationale of Robins Dry Dock, which he called "[t]he leading 'pure financial injury' case," 764 F.2d at 51, was the remoteness of the claimed economic losses. On the contrary, he "assume[d] that the [financial] injury was foreseeable." Id. Nor did he express the view that the absence of a contract between the claimant and a tort victim made the claim more remote than that of a claimant with a contract. Indeed, he stated that "[t]he authority that Justice Holmes says contains a 'good statement' of the legal principle does not, however, turn so much on the existence of a formal contract as on the existence of limitations upon tort recovery for financial injury." Id. (citing Elliott Steam and Byrd).[10]

_____

[10] In a somewhat perplexing attempt to show that the circumstances of the claim in Barber Lines were not significantly different than those of the claim in Robins Dry Dock, then-Judge Breyer explicitly rejected a distinction based on the time charterer's contract. He stated that "the present appellants must have had a 'right' to use the dock," that "interference with that 'right' caused the loss," and that "[i]t is difficult in this instance to see why the technical legal label applied to that right should make a legal difference." 764 F.2d at 51. We can accept that the claimant in Barber Lines likely had a right to use the dock, which is arguably similar in law to the time charterer's contract with the vessel owner in Robins Dry Dock, but this

Instead of relying on remoteness, he simply embraced what he understood to be the holdings of post-Robins Dry Dock cases, which, he stated, "refuse to hold a defendant liable for negligently caused financial harm without accompanying physical injury or other special circumstances." Id. at 53. And he candidly acknowledged that he favored the broad rule claimed to be derived from Robins Dry Dock because of "pragmatic or practical administrative considerations which, when taken together, offer support for" the broad rule. Id. at 54 (emphasis in original). Among these, he noted, were that "[t]he number of persons suffering foreseeable financial harm in a typical accident is likely to be far greater than those who suffer traditional (recoverable) physical harm," id.; the share of amounts paid by tort suit defendants to victims is less than the share of premium dollars earned by insurance companies that is paid out to victims who insure themselves; and the typical victim of financial losses is a business firm that is able to purchase first-party insurance, see id. at 54-56. Judge Higginbotham also invoked these considerations. See Guste, 752 F.2d at 1029.

_____

comparison overlooks the very point Justice Holmes was making: the time charterer was trying to benefit from a contract it had with the victim of a tort; the dock in Barber Lines suffered no tort injury, and the claimant was not trying to use its right (or contract) to dock to support its claim.

-15-

Other circuits have also found in Robins Dry Dock a broad rule barring economic losses for unintentional maritime torts in the absence of physical injury. See Channel Star Excursions, Inc. v. Southern Pacific Transportation Co., 77 F.3d 1135, 1137-38 (9th Cir. 1996); Getty Refining & Marketing Co. v. MT FADI B, 766 F.2d 829, 831-33 (3d Cir. 1985); Kingston Shipping Co. v. Roberts, 667 F.2d 34, 35 (11th Cir. 1982); see generally Trey D. Tankersley, The Robins Dry Dock Rule: The Tar Baby of Maritime Tort Law, 25 Tul. Mar. L. J. 371 (2000) (The "Tar Baby" allusion is borrowed from Judge Wisdom's dissent in Guste, 752 F.2d at 1035.). In the Fourth Circuit, Robins Dry Dock was followed to disallow a time charterer's claim for lost profits, but its claim for the amount it paid the owner for the period the vessel was out of service was allowed. See Venore Transportation Co. v. M/V Struma, 583 F.2d 708, 710-11 (4th Cir. 1978). The Ninth Circuit has made exceptions to a broad Robins Dry Dock rule for seamen's lost wages, see Carbone v. Ursich, 209 F.2d 178, 181-82 (9th Cir. 1954), and commercial fishermen's lost profits resulting from an oil spill, see Union Oil, 501 F.2d at 565-71.

Our Circuit's view of the broad rule attributed to Robins Dry Dock has followed a somewhat uneven course. Prior to the Supreme Court's decision, our Court had allowed the time charterer's claim for economic losses when the case was here, see Flint v. Robins Dry Dock & Repair Co., 13 F.2d 3, 5-6 (2d Cir.

-16-

1926), rev'd, 275 U.S. 303 (1927), deeming the economic losses to have been the "proximate results" of the tortfeasor's negligence, id. at 6.

Our first direct reckoning with the Supreme Court's decision in Robins Dry Dock occurred in Agwilines, Inc. v. Eagle Oil & Shipping Co., 153 F.2d 869 (2d Cir. 1946).[11] Agwilines is a slightly more complicated version of Robins Dry Dock. The owner of a time chartered ship, the Agwidale, sued the owner of the San Veronica, with which it had collided. Pursuant to the charterparty, the time charterer paid the Agwidale's owner for an interval when the Agwidale was out of service. The Agwidale's owner then sued the San Veronico's owner for what was alleged to be the time charterer's loss. Judge Learned Hand's opinion for a divided panel[12] rejected the claim stating:

---

[11] Two prior decisions had cited Robins Dry Dock for the accepted proposition that liability would exist for an intentional interference with contractual relations. See New York Trust Co. v. Island Oil & Transport Corp., 34 F.2d 649, 652 (2d Cir. 1929); Sidney Blumenthal & Co. v. United States, 30 F.2d 247, 249 (2d Cir. 1929). A third prior decision, The Toluma, 72 F.2d 690, 693 (2d Cir. 1934), aff'd sub nom. Artieselskabet Cuzco v. The Sucarseco, 294 U.S. 394 (1935), had cited Robins Dry Dock for what we have called the "narrow rule," but found the rule inapplicable because of the special circumstances that the claim was for return of a cargo owner's contribution in general average, which had been made pursuant to a so-called "Jason clause," (named for The Jason, 225 U.S. 32 (1912)). See The Toluma, 72 F.2d at 693-94.

[12] Judge Clark dissented. Agwilines, 153 F.2d at 872.

-17-

> [The Supreme Court] thought that the only basis for charging the drydocker with liability was because he had prevented the performance of the charterparty by the promisor – the owner – and that interference by a third person with the performance of a contract was an actionable wrong only if it was intentional. The Court thought it irrelevant that this resulted in exonerating the drydocker from nearly all liability through the fortuity that the profitable use of the ship had been divided between the owner and the charterer: The difficulty went deeper; the drydocker had committed no legal wrong against the charterer a[t] all, though he had caused it serious damage.

Id. at 871. Thus, Aqwilines appears to have recognized both a narrow Robins Dry Dock rule – the contract with the owner does not help the time charterer – and a broad rule – a negligent tortfeasor has no legal liability for economic losses in the absence of physical damage.

Our next significant consideration of Robins Dry Dock occurred in Kinsman II, 388 F.2d 821 (2d Cir. 1968), so named because it was preceded by In re Kinsman Transit Co. ("Kinsman I"), 338 F.2d 708 (2d Cir. 1964).[13] The Kinsman litigation

---

[13] Decisions of our Court citing Robins Dry Dock after Aqwilines and before Kinsman I and II shed no new light on its proper interpretation. See Paragon Oil Co. v. Republic Tankers, S.A., 310 F.2d 169, 175 (2d Cir. 1962) (bailee entitled to value of damaged goods); Hanlon v. Waterman Steamship Corp., 265 F.2d 206, 207 (2d Cir. 1959) (claimant not third-party beneficiary of contract); International Brotherhood of Electrical Workers v. NLRB, 181 F.2d 34, 38 &

concerned an extraordinary series of calamities of the sort more likely found in a law school torts exam than occurring in the real world. In brief, a vessel, inadequately moored, drifted down the Buffalo River, and collided with another vessel; both vessels drifted farther down the river and collided with a third vessel; a lift bridge farther downstream was not raised despite a warning; the second vessel crashed into the bridge causing a tower to fall into the river; the obstruction formed by the first two vessels and ice caused water to overflow the river banks; the overflowing water damaged a grain elevator located three miles upstream. The facts are more fully elaborated in <u>Kinsman I</u>, 338 F.2d at 711-713, 714-16.

Judge Friendly upheld the various claims for physical injuries to property, deeming them foreseeable under traditional tort principles. He acknowledged, however, that "[s]omewhere a point will be reached when courts will agree that the link [between negligent conduct and injury] has become too tenuous – that what is claimed to be consequence is only fortuity." <u>Id.</u> at 725. In the absence of a claim for economic losses, he had no occasion to consider <u>Robins Dry Dock</u>.

---

n.11 (2d Cir. 1950) (referring generally to tort of interference with contractual obligation); <u>Conmar Products Corp. v. Universal Slide Fastener Co.</u>, 172 F.2d 150, 155 & n.2 (2d Cir. 1949) (same); <u>Ozanic v. United States</u>, 165 F.2d 738, 743 (2d Cir. 1948) (vessel owner's contract to pay part of economic losses of crew members could not create liability for second vessel with which first vessel collided).

Claims for economic losses were before us, however, when the same litigation returned four years later in Kinsman II. Cargill, Inc., sought to recover the expenses of its extra transportation and storage costs incurred because the river flooding prevented it from unloading wheat on a vessel in the Buffalo harbor, and it was obliged to obtain replacement wheat to fulfill its contracts. See Kinsman II, 388 F.2d at 823. Cargo Carriers, Inc., sought to recover the extra expenses of unloading its cargo of corn from yet another vessel that had been struck by the original two colliding vessels, the damage to this vessel necessitating special equipment for unloading cargo. See id.

Judge Kaufman began his consideration of these claims by noting that the District Court, in the absence of proof of intentional interference with contracts, had rejected what the Court deemed interference-with-contract claims on the authority of Robins Dry Dock. See id. He then stated, "We too deny recovery to the claimants, but on other grounds." Id. Leaving what he termed "the rock-strewn path of 'negligent interference with contract,'" he grounded decision on "more familiar tort terrain." Id. at 824. Judge Kaufman rejected the claims as simply "too 'remote' or 'indirect' a consequence of defendants' negligence." Id. Rather than invoking the narrow rule of Robins Dry Dock,

-20-

rejecting a claim for economic losses sought to be based on the victim's contractual relation to an injured vessel, or the broad rule identified in Agwilines, rejecting all claims for economic losses in the absence of physical injury, Judge Kaufman used the traditional tort concept of foreseeability and rejected the claims as too remote. Id. at 825. All that he drew from Robins Dry Dock was Justice Holmes's statement, appended to his rejection of a contract-related claim, that "[t]he law does not spread its protection so far." Id. (quoting Robins Dry Dock, 275 U.S. at 309).[14]

Seven years later, however, a panel with two members from the Kinsman II panel (Judges Kaufman and Feinberg) explicitly applied Robins Dry Dock to reject a time charterer's claim for economic losses. See Federal Commerce & Navigation Co.

_____

[14] In Guste, Judge Higginbotham endeavored to enlist Kinsman II in support of his categorical rejection of economic losses in the absence of physical injury by claiming that Judge Kaufman had recognized "the need for the imposition of limitations on recovery for the foreseeable consequences of an act of negligence," an analysis he deemed "compatible with our own." Guste, 752 F.2d at 1026 (emphasis added) (footnote omitted). In fact, Judge Kaufman had rejected liability because he thought the claimed losses were not foreseeable. Kinsman II, 388 F.2d at 824-25. As Judge Wisdom noted in Guste, Kinsman II "rejected the requirement of physical damages without even bothering to distinguish Robins, and instead relied on customary negligence principles." Guste, 752 F.2d at 1042 (Wisdom, J., with whom Rubin, Politz, Tate, and Johnson, JJ, join, dissenting).

v. M/V Marathonian, 528 F.2d 907, 908 (2d Cir. 1975). The per curiam opinion noted an effort "to justify the [narrow] rule [of Robins Dry Dock] on the basis of remoteness of injury," and added, perhaps nostalgically, "If free to do so, we might question whether at least the damage to the principal time charterer is not so reasonably to be expected as to justify recovery." Id. (citing Kinsman II). The retreat from Kinsman II is brought into sharp focus by the District Court's opinion, which our Court labeled "considered and thorough," id. at 907, in which Judge Canella had written:

> [W]ere this Court . . . not constrained by the weight of precedent, we would reject the negligent interference with contract doctrine in favor of a negligence-causation-foreseeability analysis, such as that adopted by Chief Judge Kaufman in Petition of Kinsman Transit Co. [Kinsman II].

Federal Commerce & Navigation Co. v. M/V Marathonian, 392 F. Supp. 908, 913 (S.D.N.Y. 1975).

Our Court's next three encounters with Robins Dry Dock before today were all non-precedential summary orders, each of which, without elaboration, approved or announced what has become the broad rule that economic losses for an unintentional maritime tort are not recoverable in the absence of physical injury. In Allders International (Ships) Ltd. v. United States, 100 F.3d 942 (2d Cir. 1996) (summary order), we rejected a claim by a

concessionaire that lost revenue when a cruise ship canceled voyages because of a grounding accident. We affirmed "for substantially the same reasons set forth" in the District Court's opinion, id. at 942, in which Judge Martin had dismissed as dicta the tort-based approach of Kinsman II in favor of a "bright line approach." Allders International (Ships) Ltd. v. United States, No. 94 CIV. 5689, 1995 WL 251571, at *1-2 (S.D.N.Y. Apr. 28, 1995). Next came the two summary orders on which Judge Engelmayer relied in the pending case, Gas Natural, 2008 WL 4643944, at *1 (stating "a bright line rule barring recovery for economic losses caused by an unintentional maritime tort absent physical damage to property in which the victim has a proprietary interest") (emphases and internal quotation marks omitted), and G & G Steel, 380 Fed. App'x at 104 (same).

Although, since Marathonian, we have not considered Robins Dry Dock in a published opinion, the district court decisions in our Circuit, in addition to Judge Engelmayer's decision in the pending case, have regularly invoked the "bright line rule" barring economic losses in the absence of physical damage. See G & G Steel, Inc. v. Sea Wolf Marine Transportation, LLC, No. 06 Civ. 1840, 2008 WL 192049, at *3 (S.D.N.Y Jan. 23, 2008); Gas Natural SDG S.A. v. United States, No. 04 CIV. 8370, 2007 WL 959259, at *6 & n.5 (S.D.N.Y. Mar. 22, 2007); Conti Corso

Schiffahrts-GMBH & Co. KG NR. 2 v. M/V "Pinar Kaptanoglu", 414 F. Supp. 2d 443, 446-47 (S.D.N.Y. 2006); Brown v. Royal Caribbean Cruises, Ltd., No. 99 Civ. 11774, 2000 WL 34449703, at *5 (S.D.N.Y. Aug. 24, 2000); American Dredging v. Plaza Petroleum Inc., 845 F. Supp. 91, 93 (E.D.N.Y. 1993); Plaza Marine, Inc. v. Exxon Corp., No. 92 Civ. 1189, 1992 WL 197398, at *1 (S.D.N.Y. Aug. 5, 1992).

Having surveyed the field and our own slightly wavering contribution to it, we now explicitly accept the broad rule attributed to Robins Dry Dock that economic losses are not recoverable for an unintentional maritime tort in the absence of physical injury, mindful that for some categories of claims, exceptions may well be appropriate. We see little point in endeavoring to determine whether the broad rule that has been attributed to Robins Dry Dock was implicit in that decision or has resulted from an unstated extension of the narrow rule there announced. Instead, as then-Judge Breyer did in Barber Lines, we simply accept the broad rule, and do so for four main reasons. First, the rule has been accepted by a clear consensus of courts throughout the country, including many district courts within our Circuit. Second, Congress, possessing full authority to legislate on maritime matters, see Panama Railroad Co. v. Johnson, 264 U.S. 375, 386 (1924), has neither altered the broad

rule nor made any serious attempts to do so.[15]  Third, the rule

has the virtue of certainty.[16]  Fourth, the context in which the

broad rule primarily applies – financial losses incurred in the

course of commercial shipping – is marked by the well recognized

availability of first-party insurance to cover such losses and

the frequent purchase of such insurance.[17]

---

[15] Judge Rubin, in dissent in Guste, has replied to this

point:

> The constitutional grant of jurisdiction to federal
> courts over cases and controversies not only
> empowers but requires us . . . to decide . . . cases
> within our jurisdiction whether or not Congress has
> provided a rule of decision and even when we think
> Congress should have acted and has not done so.

Guste, 752 F.2d at 1053 (Rubin, J., with whom Wisdom, Politz,
and Tate, JJ, join, dissenting).

[16] Even in dissent, Judge Wisdom acknowledged this virtue:

> There is only one justification for the requirement
> of physical injury: If Robins [Dry Dock] establishes
> a policy of restricting the type of plaintiff who
> can recover for a defendant's negligence, physical
> property damage furnishes an easily discernible
> boundary between recovery and nonrecovery.

Guste, 752 F.2d at 1045 (Wisdom, J., with whom Rubin, Politz,
Tate, and Johnson, JJ, join, dissenting).

[17] In dissent in Guste, Judge Wisdom disputed the validity
of this factor:

> The Robins [Dry Dock] approach
> restricts liability more severely than the
> policies behind limitations on liability

-25-

We are not unsympathetic to the Appellant's earnest plea that, even if a broad <u>Robins Dry Dock</u> rule exists, recovery could be allowed in this case without countenancing an unbounded exposure of maritime tortfeasors to a vast number of economic loss claims that would stretch the concept of foreseeability up to and often beyond any discernible limit. It was surely foreseeable that an operator who had opened a drawbridge to let vessels move upriver and negligently failed to open the bridge when the vessels returned will cause economic losses to at least some of the vessels expecting to pass under the bridge. And when that operator is a governmental entity, the burden of such foreseeable losses can be spread narrowly through user fees or broadly through taxation.[18] Although the argument for a fact-

<hr>

> require and imposes the cost of the accident on the victim, who is usually not in a superior position to obtain insurance to cover this loss.

752 F.2d at 1052 (Wisdom, J., with whom Rubin, Politz, Tate, and Johnson, JJ, join, dissenting).

[18] Discussing the liability of the municipal operators of a drawbridge, the negligently delayed opening of which contributed to a variety of claims for <u>physical</u> damage, Judge Friendly wrote:

> Here it is surely more equitable that the losses from the operators' negligent failure to raise the Michigan Avenue Bridge should be ratably borne by Buffalo's taxpayers than left with the innocent victims of the flooding.

<u>Kinsman I</u>, 338 F.2d at 726.

specific exception to <u>Robins Dry Dock</u> gives us pause, we ultimately conclude that the case for such an exception on the particular facts here is outweighed by the benefits of adhering to the general rule that denies recovery for economic losses from unintentional maritime torts in the absence of physical damage. In weighing the case for exceptions to the general rule, the benefits of its certainty, the customary use of first-party insurance to mitigate or eliminate its effects, and its long recognized establishment within maritime jurisprudence weigh heavily.[19]

## Conclusion

The judgment of the District Court is affirmed.

---

[19] American seeks to draw support for its position from 33 U.S.C. § 494, which imposes duties upon bridge owners and operators. Recognizing that the statute does not create an implied private right of action, American nonetheless contends that it states a federal policy that we should enlist to narrow the broad rule of <u>Robins Dry Dock</u>. We are not persuaded. Accepting American's suggestion would effectively adopt a statutory private right of action in the guise of a tort rule.