24-1303-cv
Serifos Mar. Corp. v. Glencore Sing. Pte Ltd.

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 2nd day of June, two thousand twenty-five.

PRESENT: JOSÉ A. CABRANES,
RAYMOND J. LOHIER, JR.,
RICHARD J. SULLIVAN,
*Circuit Judges.*

------------------------------------------------------------------

SERIFOS MARITIME CORPORATION,
ANDROS MARITIME AGENCIES LTD.,

*Plaintiffs-Appellants*,

v.                                                          No. 24-1303-cv

GLENCORE SINGAPORE PTE LTD.,

*Defendant-Appellee.*

------------------------------------------------------------------

FOR APPELLANTS:                       THOMAS L. TISDALE (Timothy J. Nast, *on the brief*), Tisdale & Nast Law Offices, LLC, New York, NY

FOR APPELLEE:                     PETER J. BEHMKE (Michael P. Jones, Daniel Gomez, *on the brief*), Herbert Smith Freehills New York LLP, New York, NY

Appeal from a judgment of the United States District Court for the Southern District of New York (Lorna G. Schofield, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the District Court is AFFIRMED.

Plaintiffs Serifos Maritime Corporation and Andros Maritime Agencies Ltd. (collectively, "Serifos") appeal from a judgment of the United States District Court for the Southern District of New York (Schofield, *J.*) dismissing Serifos's breach of contract and tort claims against Defendant Glencore Singapore Pte Ltd. ("GSPL") and denying leave to amend.   We assume the parties' familiarity with the underlying facts and the record of prior proceedings, to which we refer only as necessary to explain our decision to affirm.

The following background draws from Serifos's First Amended Complaint ("FAC").   On March 10, 2022, Serifos, through its broker, ordered marine fuel

("bunker fuel") to be supplied (or, in maritime parlance, "stemmed") by GSPL in Singapore. GSPL confirmed the terms and commenced the stem of the M/T SERIFOS (the "Vessel") on March 11, 2022. The contract, which is governed by New York law, incorporated GSPL's General Terms and Conditions for the Sale of Marine Fuels ("GTC") and required that the bunker fuel conform to standards established by the International Standards Organization ("ISO") and the International Convention for the Prevention of Pollution from Ships (the "MARPOL"). The ISO contains "[g]eneral requirements," including that "fuel shall be free from any material at a concentration that causes the fuel to be unacceptable for use," Suppl. App'x 10 § 5.2, and that it "shall be free of inorganic acids," *id.* at 12 § 6.6. Serifos alleges that "[b]unker fuels containing organic chlorides are considered off specification" under the ISO and the MARPOL. App'x 75 ¶ 23.

During the stem, Serifos collected samples of the bunker fuel to send to a laboratory for testing to ensure compliance with ISO specifications. On March 20, 2022, Serifos received test results showing that the sample complied with the basic standards of the ISO but contained elevated levels of organic chlorides. At some point, the Vessel consumed a portion of the GSPL-stemmed bunker fuel

3

and "encountered significant main and auxiliary engine issues requiring extraordinary effort from the ship's crew to avoid catastrophe." *Id.* at 77 ¶ 26. The Vessel stopped consuming the GSPL-stemmed bunker fuel and diverted to various ports to load safe bunker fuel. After completing its voyage, the Vessel returned to Singapore, where GSPL removed and replaced the remainder of the allegedly off-specification fuel.

In the FAC, Serifos brought claims for breach of contract, negligence, strict products liability, intentional misrepresentation, and gross negligence. Citing liability limitations in the GTC, the District Court dismissed the breach of contract claim except insofar as it sought damages for removing and replacing the off-specification fuel.[1] The District Court dismissed the negligence and strict liability claims as barred by the economic loss rule, described below, and dismissed the gross negligence and intentional misrepresentation claims as duplicative of the contract claim. The District Court then denied as futile

---

[1] Serifos subsequently stipulated to the dismissal with prejudice of the surviving portion of its breach of contract claim.

Serifos's motion for leave to file a Supplemental Second Amended Complaint

("SSAC"). This appeal followed.[2]

## I. Breach of Contract

Section 7(a) of the GTC limits GSPL's liability, specifying that it "shall not include any consequential or indirect damages, including without limitation, deviation costs, demurrage, . . . and any actual or prospective loss of profits." *Id.* at 147 § 7(a). Section 7(d) adds a sole remedy clause, which provides that GSPL "will be responsible ONLY for direct expenses incurred for removal and replacement of Marine Fuels." *Id.* at 148 § 7(d). In its proposed SSAC, Serifos seeks $1,423,185.81 in "damages incurred to mitigate potential disastrous consequences" of consuming the off-specification bunker fuel. *Id.* at 392 ¶ 82. We agree with the District Court that these damages are barred by the unambiguous contractual liability limitations. Serifos's argument that the damages it seeks are "mitigation" damages, Appellants' Br. at 23, and are thus not barred by the section 7(a) waiver of "consequential or indirect damages," App'x 147 § 7(a), is foreclosed by section 7(d)'s sole remedy provision.

---

[2] Serifos subsequently abandoned its challenge on appeal to the dismissal of its intentional misrepresentation claim.

Serifos also argues that these liability limitations are void as a matter of public policy. It is true that "exculpatory clauses or provisions that limit liability to a nominal sum" (also referred to as nominal damages clauses) may be void as against public policy under New York law when a defendant acts with gross negligence. *In re Part 60 Put-Back Litig.*, 36 N.Y.3d 342, 349 (2020); *see Kalisch-Jarcho, Inc. v. City of New York*, 58 N.Y.2d 377, 384–85 (1983). But that "public policy rule does not extend to limitations on the remedies available to the non-breaching party." *In re Part 60 Put-Back Litig.*, 36 N.Y.3d at 353. The section 7(d) sole remedy clause is a "limitation[] on the remedies available" to Serifos and is therefore not an exculpatory or nominal damages clause. *Id.* at 353; *see id.* at 349. Under New York law, where, as here, "the clause limiting liability is negotiated at arm's length by sophisticated parties, provides for more than nominal damages, and does not wholly exculpate the breaching party," the gross negligence public policy rule does not "overcome the public policy in favor of freedom of contract." *Id.* at 355. The contract's sole remedy clause here is thus not subject to the gross negligence public policy rule.

Relying on *IS Chrystie Mgmt. LLC v. ADP, LLC*, 168 N.Y.S.3d 449, 451 (1st Dep't 2022), Serifos further contends that the liability limitations are void as a

matter of public policy because GSPL engaged in intentional or willful misconduct. Even assuming intentional misconduct could void a sole remedy clause under New York law, Serifos failed to adequately allege intentional wrongdoing. Serifos primarily relies on the allegation that GSPL's "repeated representations as to the quality of the bunkers were false and the falsity of those statements was known to" GSPL because ten other vessels that GSPL supplied had "reported the presence of organic chlorides in the bunkers." App'x 395 ¶¶ 98–99. But Serifos did not plausibly allege in either the FAC or the proposed SSAC that GSPL knew about the presence of organic chlorides *before* it stemmed the Vessel. Rather, according to Serifos's own allegations in the SSAC, the reports from the other ten vessels either did not mention the presence of organic chlorides or were sent *after* GSPL stemmed the Vessel, thus undermining any inference of GSPL's fraudulent intent. Accordingly, Serifos has failed to "alleg[e] facts to show that [GSPL] had both motive and opportunity to commit fraud" or "alleg[e] facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290–91 (2d Cir. 2006) (quotation marks omitted); *see Kaufman v. Cohen*, 760 N.Y.S.2d 157, 165 (1st Dep't 2003).

7

For these reasons, we conclude that the District Court correctly dismissed

Serifos's contract claim to the extent that it sought damages other than the costs

of removal and replacement of off-specification fuel.

## II. Negligence and Strict Liability

The District Court correctly dismissed Serifos's negligence and strict

liability claims as barred by the economic loss rule, pursuant to which "no

products-liability claim lies in admiralty when the only injury claimed is

economic loss," *E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 876

(1986), and "economic losses are not recoverable for an unintentional maritime

tort in the absence of physical injury," *Am. Petroleum & Transp., Inc. v. City of New*

*York*, 737 F.3d 185, 196 (2d Cir. 2013). Although this is a "bright line rule," *id.* at

187 (quotation marks omitted), Serifos asks us to craft a "fact specific exception

to the rule which would exclude damages incurred in mitigation of the physical

damage needed to avoid the rule," Appellants' Br. 38.[3] We decline to do so

here.

---

[3] The cases that Serifos cites in support of such an exception involved direct damage to property and damage that was not "within the contemplation of" the parties to the contract. *Dormitory Auth. v. Samson Constr. Co.*, 30 N.Y.3d 704, 713 (2018). This case,

8

## III. Gross Negligence

The District Court also correctly dismissed Serifos's gross negligence cause of action as duplicative of its breach of contract claim. "It is a well-established principle" under New York law "that a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated." *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 389 (1987). "This legal duty must spring from circumstances extraneous to, and not constituting elements of, the contract, although it may be connected with and dependent upon the contract." *Id.* To determine whether the alleged gross negligence is non-duplicative, New York courts "consider[] the nature of the injury, the manner in which the injury occurred[,] and the resulting harm." *Sommer v. Fed. Signal Corp.*, 79 N.Y.2d 540, 552 (1992). To be sure, performance of a contractual duty may carry such a strong "public interest in seeing it performed with reasonable care . . . [that] the breach of that independent duty will give rise to a tort claim." *N.Y. Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 316

---

by contrast, falls squarely within the rationale of the economic loss rule, which prevents "contract law [from] drown[ing] in a sea of tort." *E. River S.S. Corp.*, 476 U.S. at 866.

(1995).   But "where a party is merely seeking to enforce its bargain, a tort claim will not lie."   *Id.*

Serifos contends that the risk of catastrophic consequences to the Vessel and its crew, the various maritime regulations that it asserts GSPL violated, and GSPL's alleged post-sale failure to warn Serifos are sufficient to support a separate tort claim.   We disagree.   *First*, the New York Court of Appeals has rejected the view that regulatory provisions "necessarily or generally impose tort duties independent of contractual obligations."   *Id.* at 317; *see Verizon N.Y., Inc. v. Optical Commc'ns Grp., Inc.*, 936 N.Y.S.2d 86, 90–91 (1st Dep't 2011).   The maritime regulations that Serifos cites are incorporated into the contract and "are properly viewed as measures regulating [GSPL's] performance of its contractual obligations, as an adjunct to the contract, not as a legislative imposition of a separate duty of reasonable care."   *N.Y. Univ.*, 87 N.Y.2d at 317.   *Second*, the only harm that Serifos alleges is the economic harm it incurred to avoid damage to the Vessel that could have been caused by the consumption of contaminated bunker fuel.   But because "there was no abrupt, cataclysmic occurrence" in this case, and the only damages alleged are specifically contemplated by the contract, "the action should proceed under a contract theory."   *Sommer*, 79 N.Y.2d at 552;

10

*see Dormitory Auth.*, 30 N.Y.3d at 713. *Third*, GSPL's alleged post-sale failure to warn Serifos about the bunker fuel's defective condition does not permit a tort remedy either. Assuming there is such a duty, the damages Serifos alleges are wholly duplicative of the damages it alleges for breach of the contract. *See Sommer*, 79 N.Y.2d at 552.

## IV.    Leave to Amend

Finally, because Serifos would fail to state a breach of contract or tort claim even if we accept as true the facts alleged in the proposed SSAC, we affirm the District Court's denial of leave to amend the complaint as futile. *See IBEW Loc. Union No. 58 Pension Tr. & Annuity Fund v. Royal Bank of Scot. Grp., PLC*, 783 F.3d 383, 389 (2d Cir. 2015).

## CONCLUSION

We have considered Serifos's remaining arguments and conclude that they are without merit. For the foregoing reasons, the judgment of the District Court is AFFIRMED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

11